Learned, J.
This is an application under 1 Rev. Stat., 603, § 5 (marginal page), et seq. The first objection made, in opposition, is that the statute which requires notice “to the adverse party or to those who are to be affected” renders it necessary that all the stockholders should be notified. But I do not think that is a reasonable construction. It is true that in some sense every stockholder might be affected by the ordering of a new election. This proceeding is, however, somewhat analogous to a writ of quo warranto, and I think that the persons to whom notice is to be given are the persons to whom such a writ could be directed, viz : the persons who claim to have been elected and the corporation.
The facts in this case are briefly as follows :
Previous to the election of the six directors of this company in June, 1871, one William D. Grebhard had been secretary of the company and had had, as such secretary, possession of the stock-book. At that election certain directors were chosen, who elected one *396 Almerin Gallup as secretary in the place of Gebhard. After the election of Gallup as secretary, Gebhard re-fused to surrender to him the stock-book and the stock transfer book. Thereupon these directors proceeded to make a new stock-book and stock transfer book, and directed their secretary to place the names and number of shares of stock held by each person, and to enter all transfers of stock thereon, and directed that thereafter said new stock-book should be the stock-book and stock transfer book of said company.
In refusing to surrender the old stock-book Gebhard had the approbation of the present applicant. At the election in June, 1872 (the election complained of), Gallup, then the secretary of the company, produced the new stock-book and Gebhard produced the old stock-book, and both lay on the table during the election. There was no dispute or doubt that the stock-book produced by Gebhard had been the stock-book of the company up to the time of making a new book as aforesaid. And there was no doubt that it still continued to be a stock-book of the company, unless the making of the new book deprived it of that character. The inspectors of election decided to regard the book produced by Gallup as the stock-book of the company ■and to be guided by it; and they disregarded utterly the book produced by Gebhard.
After the polls were closed, the inspectors declared that the so-called “Root” ticket had 235 3-7 votes, and the so-called-“ Vroman” ticket, 233 4-7, and that the persons on the “Root” ticket were elected. The applicant was on the “ Vroman” ticket.
It appears to me that, when the board of directors found themselves unable -to get possession of the' old stock-book, they acted properly in preparing a new one as accurately as they could. Such would have undoubtedly been their duty, in case the old stock-book had been destroyed by fire. And I think that from the *397 time when the directors had prepared and adopted this new book it became the proper place for entering subsequent transfers of stock. To illustrate: If the stock-book of a company should become full of entries, the company would properly procure a new one and transfer the balance from the old to the new. From that time forward, transfers would be made in the new book.
• But the point in which I think the inspectors erred (and erred very naturally) is this : The old book did not cease to be a stock-book of the company on the making of a new one. An old ledger of a merchant is his ledger still, although: the accounts are transferred to a new book ; and when any conflict appears between an account in the old book and an account as transferred into the new, the former is the original and the latter but a copy. The inspectors were right therefore in using the new book, but they were wrong in rejecting the old. Before the new book was made, the old was undoubtedly the stock-book of the company. It did not lose that character because it was unlawfully withheld. The new book was an attempt to make, as far as possible, a copy of the old. The attempt was proper: but the copy could not supersede the original. Transfers subsequently made in the new book were, however, original, and not a copy.
To apply these principles: Willis Yan Wagenen had one share of stock, as appeared on the old stock-book. It is not disputed that he owned that share. His proxy was tendered and a vote for the “ Yroman” ticket offered. But it was rejected solely on the ground that this share did not appear on the new book, but certainly, if either accidentally or intentionally, his name was omitted in making out the new book, such omission did not deprive him of the right to vote. I think his vote should have been received.
The same remark applies to the case of Daniel Warner, who held one share and whose vote was rejected *398 on the same ground. It is true that the opposing affidavits allege that he had assigned his stock, but it had not been transferred (1 Rev. Stat., marg. p. 604, § 6; In re Cecil, 36 How. Pr., 477). Six shares stood in the name of Tobias Bouck, and a proxy signed by him and one signed by his assignee in bankruptcy was offered; a vote tendered for the “Yroman” ticket and rejected for the same reason—that his name did not appear on the new book. In this case, also, the opposing affidavits allege that his stock had been hypothecated. But the stock still stood in his name. He, therefore, or his assignee in bankruptcy, was entitled to vote. So, also, the executors of Peter Osterhout, senior, were entitled to vote on his five shares.
Jacob Yroman had on the old stock-book fifty-two shares, and had had this stock for several years. On the new stock-book he had only forty-two. It appears he had not transferred the ten shares to any person. Mr. Gallup, the secretary, states that he made in the new book an entry of the names of all persons who voted at the election in 1871. Jacob Yroman swears that he had voted on these fifty-two shares at every, election since 1868, except that of 1872. In regard to the election of 1871, it should, however, be said, that Mr. G-allup swears that Mr. Yroman did not vote at" that election.
Probably in making up the new stock-book, an accidental error was made in entering his stock at forty-two instead of fifty-two shares.
The opposing affidavits, aver, indeed, that ten of these shares were illegally issued to him in 1867 or 1868. But it is plain that the inspectors did not examine this question of illegality; and plainer still they would have had no right to do so. Certainly the board of directors, even if they had intended it, could not strike out the shares of stock belonging to a stockholder. Unless he transfers his stock, it remains.
*399 Xo question as to the legality of the shares was raised at the election; and no such question can be tried here. The inspectors should have allowed him to vote on fifty-two shares. I think also, that the inspectors erred in receiving a vote on the George Lasher stock. Lasher was dead and the proxy was signed, not by the executors or administrators, but by Ms heirs and next of kin. It appears to me, therefore, that the election of Orson Root and others, must be set aside, vacated and annulled.
The statute authorizes the court to order a new election, or to make such order and to give such relief in the premises as right and justice may require. Possibly the court might declare the other ticket elected. But I think it better to order a new election.
Ordered accordingly.